UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT YOUNG,<br><br>　　　　Petitioner,<br><br>　v.<br><br>SUZANNE M. PEERY, Warden,[1]<br><br>　　　　Respondent. | Case No. 11-cv-04985-JST (PR)<br><br>**ORDER DENYING RESPONDENT'S MOTION FOR RECONSIDERATION**<br><br>Re: Dkt. No. 33 |

**INTRODUCTION**

This federal habeas corpus action, now closed, was filed pursuant to 28 U.S.C. § 2254 by petitioner Robert Young, challenging the validity of a judgment obtained against him in state court following petitioner's jury trial in Alameda County Superior Court in 1990. On September 11, 2015, the Court granted habeas relief on two subclaims of petitioner's juror misconduct claim on the basis of evidence presented to the California Supreme Court during state habeas proceedings. The primary evidence supporting the subclaims on which relief was granted was the declaration of Juror S.W., signed under penalty of perjury in 2003 and submitted in support of petitioner's state habeas petition. The declaration established that S.W. failed to answer honestly questions posed during voir dire and, had he answered correctly, the information would have provided a basis for a

---

[1] Petitioner initially named Connie Gipson, former warden of Corcoran State Prison, as the respondent in this action, along with Matthew Cate, former Director of the California Department of Corrections and Rehabilitation. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure and Rule 2(a) of the Rules Governing Habeas Corpus Cases Under Section 2254, Suzanne M. Peery the current warden of High Desert State Prison, where petitioner is currently incarcerated, is hereby SUBSTITUTED as respondent in place of the previously named respondents.

challenge for cause. The declaration also established that S.W. held deep-seated racial bias that prevented him from impartially deciding the case.

On July 27, 2015, prior to issuing its order granting habeas relief, the Court held oral argument in the matter and granted respondent's request to file a motion for an evidentiary hearing on petitioner's juror misconduct claim. Respondent filed the motion for an evidentiary hearing on August 6, 2015, with opposition and reply briefs following on August 17 and August 24, respectively. In his motion, respondent asserted that a hearing was necessary to determine whether Juror S.W. was telling the truth in his 2003 declaration submitted in support of petitioner's state habeas petition. In the September 11, 2015 order granting habeas relief, the Court denied the motion for an evidentiary hearing on the ground that an evidentiary hearing was no longer possible given the fact that Juror S.W. had passed away in 2010.

Now before the Court is respondent's motion for reconsideration of that portion of the Court's September 11, 2015 order denying respondent's motion for an evidentiary hearing. Respondent brings the motion pursuant to Federal Rule of Civil Procedure 59(e). For the reasons stated herein, the motion is DENIED.

## DISCUSSION

### A.  Standard of Review

A motion for reconsideration under Rule 59(e) "should not be granted, absent highly unusual circumstances, unless the district court is presented with newly discovered evidence, committed *clear error,* or if there is an intervening change in the law." McDowell v. Calderon, 197 F.3d 1253, 1255 (9th Cir. 1999) (emphasis in original) (quoting 389 Orange St. Partners v. Arnold, 179 F.3d 656, 665 (9th Cir. 1999)). A district court does not commit clear error warranting reconsideration when the question before it is a debatable one. See McDowell, 197 F.3d at 1256 (district court did not abuse its discretion in denying reconsideration where question whether it could enter protective order in habeas action limiting Attorney General's use of documents from trial counsel's file was debatable).

Courts construing Rule 59(e) have noted that a motion to reconsider is not a vehicle permitting the unsuccessful party to "rehash" arguments previously presented, or to present

"contentions which might have been raised prior to the challenged judgment." Costello v. United States, 765 F. Supp. 1003, 1009 (C.D. Cal. 1991). These holdings "reflect[] district courts' concerns for preserving dwindling resources and promoting judicial efficiency." Id.

## B. Analysis

Respondent contends that reconsideration is warranted on the grounds that "this Court erred in concluding that 'an evidentiary hearing is no longer possible.'" Dkt. No. 33 at 2. Specifically, respondent asserts that the Court failed to consider the following four scenarios that would allow the Court to reject Juror S.W.'s declaration: "(1) S.W. may have been mentally or physically ill or under the influence of drugs at the time he signed the declaration, as suggested by the fact that his death certificate shows that he committed suicide; (2) the defense investigator may have pressured or coerced S.W. into signing the declaration; (3) the nature of the declaration itself is anomalous, as it is unclear why a true racist would sign a declaration designed to help petitioner overturn his conviction; and (4) witnesses and other evidence may refute particular factual assertions in the declaration, thereby calling into question its overall accuracy, including S.W.'s credibility." Dkt. No. 33 at 2.

While it is true that the Court did not individually address each scenario posited by respondent, the Court in its order pointed out that respondent had not set forth what evidence the state could introduce, how it would get around the hearsay barriers to such evidence, or how such evidence would have sufficient probative weight to refute S.W's statements, including deeply racist statements and statements showing other biases—e.g., that he knew the crime scene area and had once been robbed at gunpoint in the area. In an apparent attempt to rectify these evidentiary shortcomings, respondent now submits the August 17, 2015 report of a preliminary investigation. See Dkt. No. 33 at 8-15. Specifically, respondent, via an inspector for the Alameda County District Attorney's Office, submits statements from interviews with three witnesses: S.W.'s sister (P.T.), S.W.'s ex-wife (L.A.), and S.W.'s close friend and former coworker (M.F.).[2]

---

[2] Respondent does not contend that the preliminary report constitutes "newly discovered evidence" as grounds to support his Rule 59(e) motion. Nor could he, given that he received the report a week before filing his reply brief on the motion for an evidentiary hearing.

1    The Court first notes that the statements in the report are unsworn, contain multiple hearsay statements, and contradict each other on multiple points. The Court will nonetheless consider the statements and apply them to the four scenarios posited by respondent, as listed above.

Regarding scenario 1, i.e., that S.W. may have been mentally or physically ill or under the influence of drugs at the time he signed the declaration: none of the witnesses reported that S.W. was or may have been mentally or physically ill or under the influence of drugs when he signed the declaration. Indeed, L.A. stated that she was with S.W. when he met with the defense investigator in 2003, and she reported no problems with his mental state. And P.T. reported that she believed S.W. was happy in 2003 as "[his] business was doing fine and his personal life was good." Dkt. No. 33 at 11.

Regarding scenario 2, i.e., that the defense investigator may have pressured or coerced S.W. into signing the declaration: although L.A. stated that she believed the defense investigator "modified" S.W.'s language to use vocabulary that S.W. did not use, she did not state that she thought S.W. was pressured or coerced into signing. Dkt. No. 33 at 11-12. When asked if the declaration was an accurate representation of the conversation between S.W. and the investigator in 2003, L.A. stated "she couldn't remember." Dkt. No. 33 at 12. The other two witnesses had nothing to say on this point. And all three witnesses stated that the signature on the 2003 declaration looked like S.W.'s signature. Dkt. No. 33 at 10, 12, and 13.

Regarding scenario 3, i.e., the nature of the declaration itself is anomalous, as it is unclear why a true racist would sign a declaration designed to help petitioner overturn his conviction: it is clear from the record that S.W. did not think that his declaration was "designed to help" petitioner. S.W.'s declaration itself contains a number of statements denigrating petitioner and indicating that S.W. believed petitioner got what he deserved. In addition, L.A. told the inspector that S.W, when meeting with the defense investigator in 2003, expressed concerns that petitioner should "remain in jail." Dkt. No. 33 at 11. The remainder of the witness statements contained in the preliminary investigative report shed no further light on this subject. In any event, respondent fails to explain

how what S.W. understood in terms of the purpose of the declaration can be resolved now that S.W. is deceased.

Regarding scenario 4, i.e., witnesses and other evidence may refute particular factual assertions in the declaration, thereby calling into question its overall accuracy, including S.W.'s credibility: respondent quibbles over statements made by the three witnesses pertaining to whether S.W. was an NRA number, whether he had an uncle who built houses in the crime neighborhood, and whether dogs mentioned in the declaration were hunting dogs or merely house pets. The witness statements on these points are a mixed bag which the Court need not sort out here, except to say that they fall far short of compelling an evidentiary hearing. As explained in the Court's September 11, 2015 order, relief on the juror voir dire concealment claim was not based on these points but rather on the fact that S.W. concealed that he had been robbed at gunpoint in an area geographically close to the scene of at least one of the crimes at issue in his trial, making S.W. subject to challenge for cause for implied bias. Nothing in the witness statements refutes this or even questions whether S.W. knew the neighborhood where the crimes occurred.

Not only do the witness statements add little to nothing to the scenarios posited by respondent, they actually confirm that S.W. held deep-seated racial bias. L.A. is quoted as saying, "[S.W.] was the kind of person that didn't like Hispanics, he didn't like black people, he didn't like Chinese people, he liked only people that were white." Dkt. No. 33 at 12. As to M.F., the preliminary report states:

> Her general reaction to the declaration after reading it was to say that "[S.W.] was prejudice [sic.]." She based that opining [sic] on stories he used to tell her about his fear that someone was going to take advantage of his elderly parents and break into their home. She also said he treated some customers [in] the store differently when they would come in and try to "talk you into something for nothing." "He had a thing about Asians, he had a thing about blacks, he had a thing about Latinos." Unlike the interviews with [S.W.]'s sister and ex-wife, [M.F.] said her reaction to the declaration was that "it sounded just like him."

Dkt. No. 33 at 13.

It is noteworthy not only that L.A. and M.F. confirmed that Juror S.W. was prejudiced against African-Americans, but also that they both added, apparently without prompting and in

strikingly similar language, that he was prejudiced against Asians and Hispanics as well. It is also significant that the inspector for the Alameda County District Attorney's Office presented these two statements as direct quotations rather than as his own summaries of the statements.[3] These proffered statements, far from supporting reconsideration, bolster the Court's grant of relief on the juror racial bias claim absent an evidentiary hearing.

In sum, nothing in respondent's preliminary investigative report, or in the motion for reconsideration itself, establishes that counsel has evidence sufficiently probative to refute S.W.'s declaration as to require an evidentiary hearing. S.W.'s statements are alarming to be sure. Respondent uses the alarming nature of S.W.'s declaration to urge the Court to question its veracity. But the declaration is alarming precisely because it is so candid. Juror concealment is alarming; juror racism even more so. That is why they are denounced by the Sixth Amendment and, in turn, by federal habeas corpus law. These qualities in S.W.'s declaration do not undermine either the declaration's veracity or this Court's confidence in its prior ruling.

## CONCLUSION

For the foregoing reasons, respondent's motion for reconsideration is DENIED.

The Clerk is directed to substitute Warden Suzanne M. Peery on the docket as the respondent in this action.

This order terminates Docket No. 33.

IT IS SO ORDERED.

Dated: November 24, 2015

_____
JON S. TIGAR
United States District Judge

---

[3] As for S.W.'s sister, P.T., her statement on this issue does not deny that Juror S.W. was racially biased, but merely indicates that she and her brother were not raised to be racially biased and that she "does not believe" he was racially biased. Dkt. No. 33 at 10.

6